UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| SHARON H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 20-cv-787-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Sharon H. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## <u>BACKGROUND</u>

On December 29, 2016, Plaintiff protectively filed her applications for DIB and SSI, alleging disability beginning September 2, 2015 (the disability onset date), due to asthma and hypertension. Transcript ("Tr.") 64-67, 73-76. Plaintiff's claims were denied initially on March

31, 2017, after which she requested an administrative hearing. Tr. 80-81, 86. On March 26, 2019, Administrative Law Judge John R. Allen (the "ALJ") conducted a video hearing from Toledo, Ohio. Tr. 15, 30-63. Plaintiff appeared and testified in Buffalo, New York, and was represented by Zachary Zabawa, an attorney. Tr. 15. Tricia Muth, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on June 24, 2019, finding that Plaintiff was not disabled. Tr. 15-24. On May 5, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's June 24, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his June 24, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since September 2, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The  claimant has the following severe impairments: asthma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and SSR 83-10,[1] except the claimant cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs. The claimant must avoid concentrated exposure to dust, fumes, gases, other pulmonary irritants. Finally, she must avoid exposure to extremes of temperature, dampness, and humidity.

6. The claimant is capable of performing past relevant work as a Child Care Worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 2, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 15-24.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on December 29, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 24. The ALJ also determined that, based on the application for supplemental security benefits protectively filed on December 29, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error, both of which challenge the ALJ's RFC finding. *See* ECF No. 11-1 at 15-22. Plaintiff first argues that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ "improperly evaluated and explained" the opinion evidence and failed to develop the record by obtaining missing specialist pulmonologist treatment records and updated pulmonary function testing. *See id*. at 15-23. Plaintiff next argues that the ALJ's RFC findings do not sufficiently account for Plaintiff's exertional limitations and need for rest breaks and missed workdays. *Id*. at 23-27.

The Commissioner argues in response that the ALJ properly considered the opinion evidence and properly accounted for Plaintiff's limitations in the RFC, and the ALJ's RFC finding is supported by substantial evidence. *See* ECF No. 12-1 at 6-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ carefully considered the evidence of record, including the medical opinion evidence, treatment notes, and other objective evidence, and his RFC determination was supported by substantial evidence. As the ALJ properly concluded, Plaintiff's hypertension was non-severe and caused no functional limitations. Tr. 18. Furthermore, the ALJ extensively discussed Plaintiff's asthma, including records showing mostly normal respiratory examinations and some irregular exacerbations, and the limitations in the RFC properly accounted for Plaintiff's asthma. Tr. 19-21.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the

RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Plaintiff first argues that the ALJ improperly discounted the opinions of family nurse practitioner Takesha Leonard, FNP ("Ms. Leonard"), and consultative examiner David Brauer, M.D. ("Dr. Brauer"), and improperly relied on a non-examining source opinion from Barbara Souter, M.D. ("Dr. Stouter') that was "incomplete." *See* ECF No. 11-1 at 15-23. The ALJ accorded no weight to Ms. Leonard's opinions (Tr. 22); partial weight to Dr. Brauer's opinion that Plaintiff was moderately to markedly limited in her ability to perform activities that required mild or greater exertion due to respiratory condition and should avoid respiratory irritants due to history of asthma;

and great weight to Dr. Stouter's assessment that Plaintiff was limited to light work and needed to avoid even moderate exposure to pulmonary irritants. Tr. 22.

As discussed further below, the ALJ's RFC finding of light work with additional limitations is supported by substantial evidence in the record. In reaching his conclusion, the ALJ considered all of the treatment notes and opinion evidence in the record, noting that Plaintiff's chronic asthma was well-documented and under control with flare-ups occurring irregularly during the relevant period. Tr. 22. Plaintiff was diagnosed with asthma in 2010. Tr. 432. As the ALJ noted, medical imaging in January of 2016 showed no acute abnormalities. Tr. 20, 276. Plaintiff obtained medical treatment from Jericho Road Community Health Center ("Jericho Road"), where she often treated with Ms. Leonard. Tr. 351-86, 447-489. The ALJ considered that respiratory examinations at most of Plaintiff's examinations were unremarkable and no respiratory conditions were diagnosed. Tr. 20. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes to formulate the RFC assessment).

During examinations on June 27, 2016, August 24, 2016, October 13, 2016, and November 14, 2016, Plaintiff denied any respiratory symptoms, and on examination, respirations were unlabored, respiration rate was normal, airflow was good, and lungs were clear. Tr. 355-56, 359-60, 362-63. In fact, as the ALJ points out, notes from Plaintiff's August 24, 2016 visit indicated that Plaintiff would be ready to return to work as a housekeeper after her gallbladder was removed. Tr. 20, 483.

On February 10, 2017, Plaintiff experienced an acute asthma exacerbation. Tr. 471. However, treatment notes after the exacerbation continued to show that Plaintiff's asthma was again well controlled. On September 13, 2017, Plaintiff indicated that she used her nebulizer three times per month, and that it provided relief when she felt chest tightness and wheezing. Tr. 468.

On October 23, 2017, Plaintiff denied chest discomfort, chest tightness, dizziness, dyspnea, edema, fatigue, orthopnea, palpitations, or syncope. Tr. 462. On examination, she had regular respirations, no wheezing, good airflow, and clear lungs bilaterally. Tr. 463. Examination notes from December 6, 2017 indicated unlabored respiration, good airflow, and clear lungs bilaterally. Tr. 459. The ALJ also considered that treatment notes from December 4, 2018 state that Plaintiff used maintenance inhalers as prescribed and had not used a rescue inhaler in several months. Tr. 21, 447. She denied chest pain, shortness of breath, dizziness, or headaches. Tr. 447. It was also noted that Plaintiff was a heavy smoker, and she was advised to quit smoking. Tr. 355, 447, 465. The ALJ noted that treatment records from December 2018 indicated that Plaintiff was still smoking (Tr. 447), but she testified that she stopped smoking around that time or perhaps shortly thereafter (Tr. 51). Tr. 22.

The ALJ also properly considered the opinion evidence in the record. Tr. 22-23. Dr. Brauer examined Plaintiff on February 15, 2017, one week after Plaintiff experienced an acute asthma exacerbation. Tr. 432-35, 471. At the examination, Plaintiff was visibly coughing and audibly wheezing but was in no acute distress. Tr. 21, 433. Dr. Brauer found moderate to marked limitations in Plaintiff's ability to perform activities that required mild exertion or more due to her respiratory condition and opined that she should avoid dust, smoke, allergens, or other respiratory irritants. Tr. 435. A ventilation test was rescheduled due to Plaintiff's respiratory status. Tr. 434. As noted above, the ALJ gave partial weight to this, noting that while it was consistent with the examination of Plaintiff, it was not consistent with the record as a whole, which recently had shown Plaintiff's respiratory function to be unremarkable, with unlabored respiration and good air flow. Tr. 22, 355-56, 359-60, 362-63. Despite mostly normal respiratory function throughout the relevant period, the consultative examination was during a time in which Plaintiff's asthma was exacerbated. Tr. 22.

The ALJ also considered the results of the follow up pulmonary function test, which was performed on March 8, 2017. Tr. 22, 436. Plaintiff was not in acute respiratory distress or wheezing, but her FEV1 result was 68 percent (observed of 1.77 as a percentage of predicted of 2.60).[2] Tr. 434, 436. However, the report indicates that Plaintiff had poor cooperation and poor effort during the test, despite the attempts of two different medical assistants. *Id*. Because of the poor effort noted, the ALJ gave the ventilation test limited value. Tr. 22. Plaintiff asserts that further testing was necessary based on the ALJ's duty to develop the record. *See* ECF No. 11-1 at 19. However, it was not necessary for the ALJ to obtain an additional pulmonary function test, because the record already contained a complete medical history with several years of treatment notes and no obvious gaps. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.").

The ALJ also properly gave great weight to the opinion of state agency medical consultant Dr. Souter. Tr. 22. "State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (citing 20 C.F.R. § 404.1527(e)(2)(i), 416.927(e)(2)(i)). Opinions from non-examining sources, including state agency consultants may be entitled to significant weight and may even override treating source opinions, provided they are supported by evidence in the record. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993)); 20 C.F.R.

---

[2] FEV is short for forced expiratory volume, which is how much air you can force from your lungs in one second. Spirometry, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/spirometry/about/pac-20385201 (last visited August 12, 2021). A FEV1 score below 80% is considered abnormal. Spirometry: What to Expect and How to Interpret Your Results, Healthline, https://www.healthline.com/health/spirometry (last visited August 12, 2021).

§§ 404.1513a(b)(1), 416.913a(b)(1) (State agency medical consultants are highly qualified and experts in Social Security disability evaluation).

Dr. Stouter reviewed the evidence in the record and opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; could stand, sit, and walk about six hours in an eight-hour workday; and should avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation. Tr. 69. Dr. Stouter considered that Plaintiff was able to cook and clean on a daily basis, and she had multiple visits to Jericho Road with no respiratory symptoms and normal lung examinations. Tr. 70, 433, 355-56, 359-60, 362-63., 356-58, 459. She also considered Plaintiff's consultative examination and her pulmonary function test, during which Plaintiff made poor effort. Tr. 70, 436. In assigning great weight to this opinion, the ALJ considered that Dr. Stouter is an expert in the disability requirements of Social Security and the evidentiary requirements. As noted, she justified her opinions with appropriate citations to the record; and she considered Plaintiff's level of functioning at home as well as her medical history. Tr. 22.

Finally, the ALJ appropriately gave no weight to the opinions of Ms. Leonard. Tr. 22-23, 429-30, 531-35. On a "work excuse" note dated August 24, 2016, Ms. Leonard indicated that Plaintiff could return to work on September 6, 2016 with no restrictions. Tr. 379. Although the note did not indicate what, if any, restrictions Plaintiff was under before that time, or what condition was being evaluated, the ALJ surmised, based on subsequent office visit notes, that any implied restrictions were due to Plaintiff's gallbladder surgery. Tr. 23, 379, 401.

On February 7, 2017, Ms. Leonard indicated that Plaintiff's asthma and hypertension limited her to standing or walking 4 hours per day, lifting or carrying 30 pounds occasionally and 20 pounds frequently. Tr. 429. She also indicated that Plaintiff would likely miss work 1-2 days

per month. *Id.* As the ALJ noted, this limitation is not explained and does not follow from Plaintiff's reported work history or medical history. Tr. 22.

Ms. Leonard completed another medical source statement on March 4, 2019, wherein she indicated that Plaintiff's moderate, persistent asthma limited her to standing or walking less than 2 hours a day, and required her to shift positions at will, take unscheduled breaks every 1-2 hours, and lift up to 10 pounds occasionally and less than that frequently. She indicated that Plaintiff could move her head or hold it in a static position frequently; climb stairs occasionally, climb ladders never, and squat, stoop, or twist frequently. Tr. 531-35. Ms. Leonard indicated that Plaintiff's condition would cause her to be absent from work about three days per month. *See id.* Finally, she indicated that Plaintiff's condition would preclude full-time employment at any exertional level. *Id.*

As the ALJ explained, Ms. Leonard did not explain how Plaintiff's moderate asthma precluded full-time work generally, or warranted any particular functional limitations, including postural limitations. Tr. 23. Neither did Ms. Leonard explain her estimate of Plaintiff's likely absenteeism, which, as the ALJ explained, was not consistent with Plaintiff's work or medical record. *Id. See, e.g.*, *Palmer v. Berryhill*, No. 17-CV-6260, 2018 WL 3537074, at *5 (W.D.N.Y. July 23, 2018) (ALJ was entitled to discount nurse practitioner and physician's opinion that plaintiff would be off task more than 20% of an eight-hour workday and absent from work more than four days per month as speculative, and not based on any documented observation or evaluation, "because the SSA's regulations authorize [the ALJ] to discount an opinion that lacks support, particularly medical signs and laboratory findings, and is not well explained."). Furthermore, the ALJ noted that Ms. Leonard's assessment omitted material information, including

her own clinical observation in December 2018 that Plaintiff had not used a rescue inhaler in several months. Tr. 23, 447.

In according no weight to Ms. Leonard's opinions, the ALJ appropriately considered the regulatory factors for evaluating medical opinions,[3] including the fact that Ms. Leonard is an "other source," rather than an "acceptable medical source," and thus, her opinion was not entitled to any particular deference. *Anderson v. Colvin*, No. 5:12-CV-1008 GLS/ESH, 2013 WL 5939665, at *6 (N.D.N.Y. Nov. 5, 2013); *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."); *see also* 20 C.F.R. § 416.913.

The ALJ nevertheless considered Ms. Leonard's opinions under the regulatory factors found in 20 C.F.R. §§ 404.1527(c); 416.927(c), including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). However, the ALJ was not required to consider every factor. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Here, the ALJ discussed the length of the treatment relationship, noting that Plaintiff had treated with Ms. Leonard from 2016 through 2019. Tr. 22. *See* 20 C.F.R. §§ 404.1527(c)(1),

---

[3] The Court notes a change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

416.927(c)(1). The ALJ also referred to Ms. Leonard's specialization as a family nurse practitioner. *Id*.; *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ also discussed the supportability and consistency of Ms. Leonard's opinion. Tr. 23; 20 C.F.R. §§ 404.1527(c)(3) and (4); 416.927(c)(3) and (4). As discussed above, the ALJ noted that Ms. Leonard did not explain the basis of either of her opinions; neither of her opinions followed from Plaintiff's reported work history or medical history; her assessment was not consistent with the evidence as a whole. Tr. 23. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff's second point of error—that the ALJ failed to account for Plaintiff's exertional limitations in the RFC (*see* ECF No. 11-1 at 23)—is similarly unavailing. In making this argument, Plaintiff asks that the ALJ adopt the limitations opined by Ms. Leonard, as well as some of the limitations assessed by Dr. Brauer. *See id*. at 23-27. However, as discussed above, the ALJ's assignment of weight to the medical opinions of record was supported by substantial evidence. Furthermore, contrary to Plaintiff's assertion, the ALJ did indeed consider Plaintiff's exertional limitations.

In limiting Plaintiff to light work, the ALJ limited Plaintiff to lifting no more than 20 pounds at a time and frequent lifting or carrying of up to 10 pounds. Tr. 19. 20 C.F.R. §§ 404.1567(b); 416.967(b). Additionally, light work jobs require approximately six hours of walking or standing in an eight-hour workday. *Id*; SSR 83-10. The ALJ further limited Plaintiff, indicating she could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; she must avoid concentrated exposure to dust, fumes, gases, or other pulmonary irritants; and she must avoid exposure to extremes of temperature, dampness, and humidity. Tr. 19. These limitations appropriately considered that while Plaintiff had mostly normal respiratory examinations and her

asthma was well controlled, she did have occasional flare ups, deeming her unqualified for a job with excessive exertion. Tr. 22.

Plaintiff also argues that the ALJ erred in not adopting Ms. Leonard's opinions regarding Plaintiff's off-task time and missed workdays and asserts that Ms. Leonard's opinion was not contradicted by any opinion or the record. *See* ECF No. 11-1 at 24. This assertion is not supported by the record. Neither the opinion of consulting examiner Dr. Brauer, nor the opinion of state agency consultant Dr. Souter, opined that Plaintiff would require any time off-task or missed workdays. Tr. 69, 435. Furthermore, for all the reasons discussed above, the Court has already determined that the ALJ's assignment of no weight to Ms. Leonard's unsupported and inconsistent non-acceptable medical source opinions was supported by substantial evidence.

Finally, Plaintiff argues that the ALJ mischaracterized Plaintiff's activities of daily living and work history. *See* ECF No. 11-1 at 26. However, it is Plaintiff who mischaracterizes the ALJ's analysis. To the extent that the ALJ discussed Plaintiff's activities of daily living, it was within the context of Plaintiff's hearing testimony—not, as Plaintiff claims, to discredit the opinion of Ms. Leonard. The ALJ noted that Plaintiff testified that she tried to find a job in hotel cleaning in 2016 after her gallbladder was removed, but the company she had worked for had no work for her. Tr. 20, 43. The ALJ also considered that Plaintiff cleans, does household chores, washes dishes, does laundry, cooks, goes for walks, and attends church on weekends. Tr. 19, 49, 443. While these activities were not explicitly considered by the ALJ in determining Plaintiff's RFC, it was certainly within his authority to do so. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (ALJ's RFC finding supported by substantial evidence including activities of daily living). Contrary to

Plaintiff's argument, the ALJ could reasonably have found that these reported activities undermined Plaintiff's claims of disabling symptoms and limitations and supported an RFC for light work. Tr. 25-26.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude her performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) ((The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.)); *see also Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[Commissioner] is entitled to rely not only on what the record says but also on what it does not say."). Plaintiff here has not met her burden.

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.").

Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine

conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id.* at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here has failed to meet this burden.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the medical opinion evidence, treatment reports, and diagnostic testing, as well as Plaintiff's testimony, and his findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE